[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 395 
Tide Water Associated Oil Company, referred to as Tidewater, and Joseph Newman, Inc., referred to as Newman, appeal from a judgment entered upon a jury verdict after trial in the Law Division of the Hudson County Court. Subsequent to the entry of judgment for $60,000 in favor of the plaintiff, Harry D. Batts, the judgment was reduced to $48,000. The plaintiff sued the corporate defendants and the drivers of the Newman car. The jury returned a verdict in favor of Newman's driver. On December 16, 1946, the plaintiff was standing on the sidewalk alongside a coal truck parked on the east side of Avenue E in the City of Bayonne, which street runs north and south. Shortly prior to the accident, a truck owned by Newman was proceeding in a southerly direction. A cylinder or tank weighing approximately 35 pounds fell therefrom into the highway, of which fact the driver of the Newman truck was unaware. The cylinder came to rest in the middle of Avenue E approximately opposite the coal truck parked on the easterly side thereof and behind which the plaintiff was standing. After a lapse of between two and five minutes, two trucks came along Avenue E in a northerly direction. The first of the two trucks was a green tank truck; the second was orange in color and is said to have had the name "Tidewater" upon it. For purposes of clarity only, we will refer hereafter to that truck as the "Tidewater truck." As it neared the point in Avenue E where the cylinder was lying, the Tidewater truck pulled to its left to pass the tank truck and as it did so, its right front wheel struck the cylinder, projecting it to the right underneath the chassis of the parked coal truck where it struck the plaintiff, causing comminuted fractures of both legs, requiring *Page 397 
his hospitalization for something over one year. Plaintiff's action against Tidewater and Newman was predicated upon negligence of Newman in improperly and negligently fastening the cylinder in its truck. The negligence of Tidewater was based upon the negligent failure to avoid the object in the highway and to make proper observations. We will first discuss the appeal of Tidewater Associated Oil Company and develop the facts so far as need be in discussing the various points raised.
Tidewater argues that the trial judge erred in refusing to grant its motion for nonsuit and for a directed verdict. Whether or not the driver of the Tidewater truck was negligent, depends mainly upon the testimony of one Mary Kovacs who was seated in an automobile parked on Avenue E facing south about one and a half blocks north of the scene of the accident. She testified that she saw the cylinder fall from the Newman truck, that it lay in the center of the street for from two to five minutes, that she saw the dark green tank truck and the orange rack truck as they approached the cylinder, that the tank truck veered to his right toward the curb and as he did so the orange truck struck the cylinder. At that time the Tidewater truck was going fast. From the evidence, it was for the jury to determine whether or not the driver of the Tidewater truck was negligent. There was no error in the refusal to nonsuit or direct a verdict in favor of Tidewater.
The next point argued is that "there was no sufficient proof of ownership in the defendant Tide Water of the truck allegedly involved in the occurrence, either at the close of the plaintiff's case and certainly not at the close of the defendant's case." The witness Kovacs described the color of the truck as "orange," "red orange" and "kind of orange color." She testified that she saw the word "Tidewater" on the truck and it is argued on behalf of the defendant Tidewater that seated as she was a block and a half from the scene of the accident, the angle was so acute as to make it highly improbable that she saw, at that time, the word "Tidewater." This argument loses weight in view of the fact that after striking the cylinder, *Page 398 
the orange truck came on toward her and at some point must have been abreast of her, at which time she could have easily read the name. The force of her testimony was somewhat weakened on cross-examination. A co-employee of the plaintiff, one Day, testified that he saw the name "Tidewater" on the truck. On cross-examination he testified that he saw "Tidewater Oil." The plaintiff testified that he saw the name "Tidewater" on the truck. At the close of the plaintiff's case, there was evidence, if believed by the jury, from which it might have reasonably found that the offending truck was owned by Tidewater. The defendant produced the plant operator who testified that only three of the four rack trucks owned by Tidewater were on the public highways on the day of the accident, and he further testified that the fourth truck did not leave the company yard. The drivers of each of the three trucks then testified that no one of them was at the scene of the accident at the time when it occurred. In this state of the evidence, it was open to the jury to believe the plaintiff's witnesses or the defendant's witnesses, and it was therefore proper for the trial court to leave the question of ownership for the decision of the jury.
It is argued that the trial court erred in permitting the introduction of an ordinance of the City of Bayonne, which prescribed a route for tank trucks and trailers carrying inflammable oils and liquids. That part of Avenue E where the accident happened was a part of the prescribed route. It is said that the introduction of this ordinance was prejudicial to the defendant, Tidewater, in that the jury might consider it applicable and might find that it had been violated, and further such finding might have been the basis for holding Tidewater to have been negligent. We think that the ordinance was irrelevant. There is no proof that the Tidewater truck was either a tank truck or trailer, carrying inflammable oils and liquids, and there is no suggestion in this record that the rack truck was carrying inflammable oils or liquids at the time. Be that as it may, we fail to see how the introduction of the evidence can be said to have injuriously affected the substantial rights of the parties. The error, if any, was *Page 399 
cured by the testimony of the plant manager of Tidewater who, when called as a witness on behalf of Tidewater, testified that "all oil trucks must use Avenue E."
The last point argued on behalf of Tidewater is that the trial court abused its discretion in refusing to reduce the verdict of $60,000 below $48,000. A reading of the testimony as to the extent of the injuries and the disability shows no abuse of discretion.
As to the appeal of Newman, the first point raised is that the court erred in refusing to grant a motion for nonsuit. Under the evidence it was open to the jury to find that early in the day the tank was standing upright in the body of the truck, secured thereto, that between 8 A.M. and 2 P.M. something happened and it fell from the truck into the street, and it was open to the jury, if they so wished, to find that the defendant Newman was negligent in the failure to have a barrier at the rear or tail end of the truck which would prevent loose objects from falling out.
It is next argued that the act of an independent agency intervened between any negligence of Newman and the injury to the plaintiff. The weakness of the argument based on an efficient intervening cause lies in the fact that the jury found Newman negligent, and its negligence having been established, it is chargeable with the damages that are the natural and proximate results thereof — natural result meaning such as might reasonably be foreseen; proximate meaning that no other culpable and efficient agency intervened between Newman's negligence and the injury to plaintiff. Smith v. Public Service Corp., 78 N.J.L. 478
(E. A. 1910). It seems clear that defendant Newman could reasonably foresee that if the cylinder fell on the public highway there was a reasonable probability that a passing vehicle might strike it.
The second point argued is error in failure to direct a verdict for the defendant Newman. As to this, what has been said as to the denial of the motion for nonsuit is applicable.
The third point is directed to the court's refusal to charge certain requests. A reading of the charge in its entirety *Page 400 
shows that the court adequately charged the jury on the question of proximate cause. As to the failure to charge on the independent act of a third person, we are here dealing with a concurring cause rather than a superseding cause. In Millman v.United States Mortgage Title Guaranty Co., 121 N.J.L. 28
(Sup. Ct. 1938), it was said that a wrongdoer is answerable for the results naturally and proximately ensuing from the wrongful act "even though it be immediately produced by an intervening cause, if such intervening cause was put in operation by the primary wrongful act." That is the situation in the instant case.
It is next argued that the verdict against Newman is without legal foundation because its servant, Tennis, the driver, was exonerated. The answer to this argument is that the jury could have found from the evidence that the negligence of Newman was in failing to securely fasten the cylinder and in failing to have proper safeguards to prevent the cylinder from rolling off the truck into the roadway, a duty which did not devolve upon its driver.
We find no abuse of discretion in the court's refusal to set aside the verdict and grant a new trial.
For the reasons stated, the judgment under appeal is affirmed.