Fannie Betzold and Donald Betzold, Plaintiffs-Appellants, v. Paul G. Erickson and Lillian Erickson, Defendants. Paul G. Erickson, Defendant-Appellee.

Gen. No. 10,390.

Third District.

May 16, 1962.

Roberts and Kepner, of Springfield, for appellants.

White & Hickman, Paul M. Hickman, Guardian Ad Litem for Paul G. Erickson, a Minor, of Hillsboro, for appellee.

ROETH, PRESIDING JUSTICE.

Suit was brought by Fannie and Donald Betzold, husband and wife, against Paul Erickson and his mother, Lillian Erickson, for property damages and personal injuries sustained by plaintiffs in a collision between the automobile of Donald Betzold, being driven by Fannie Betzold, and a truck driven by Paul Erickson. A jury trial resulted in a verdict for defendants against plaintiffs. Plaintiffs filed a post trial motion for judgment notwithstanding the verdict and in the alternative for a new trial, which motion was denied and judgment entered accordingly. Donald Betzold was not present at the time of the occurrence, but is the owner of the automobile and therefore interested in this proceedings. Plaintiffs' post trial motion was not directed to the verdict in favor of Lillian Erickson, and no appeal was taken from the judgment in her favor, therefore Paul Erickson will be referred to here as defendant.

The complaint of Fannie Betzold charges defendant with one or more of the following acts of negligence:

"a. Drove onto left one-half of the roadway.

b. Failed to pass to the right of the plaintiff and failed to give to the plaintiff one-half of the mainly traveled portion of the highway.

c. Failed to keep a proper lookout.

d. Failed to keep the truck under control.

e. Drove at a speed that was greater than was reasonable and proper having regard to the narrowness of the road and the dusty condition and surface thereof.

f. Drove onto left one-half of the road and into the front of plaintiff's car which was stopped."

Fannie Betzold seeks damages for personal injuries and in a separate count her husband seeks damages for damage to his car, medical expenses for his wife and loss of consortium.

The record before us discloses that on August 28, 1959, defendant, then 13 years old, drove the family pickup truck, with his mother's permission, to meet a friend, Lawrence Johnson. The two boys went swimming and then proceeded home, each in their own vehicle, the Johnson boy first, followed by the defendant. They were driving west along a country road and at the time they reached the place where the collision occurred defendant was following Johnson some 100 to 150 yards to the rear of the Johnson car, traveling between 30 and 35 miles per hour. The road was of gravel and dirt construction and had recently been scraped in preparation for oiling of the surface and was quite dusty. The road was 18 feet in width, with a ditch about 18 inches deep on the north and south side. The road inclined slightly, so that as defendant proceeded in a westerly direction he was driving down a slight decline.

Fannie Betzold was driving her husband's car in an easterly direction, delivering dinner to her husband

who was attending some field event in the area. As she proceeded up the road, she drove in the center of the same until the Johnson car approached when she pulled over to her right and slowed down. The Johnson car raised considerable dust, and being unable to see, she pulled over to the right as close to the ditch as possible and stopped. The Johnson car proceeded on west without in any way coming in contact with the Betzold car. Up to this point, the testimony is not contradicted, neither party to the suit could see the other and no other evidence was offered to contradict or corroborate this testimony.

Fannie Betzold then further testified that at this point she saw defendant's truck some 250 feet east of her, coming down the middle of the road. It then swayed to its left, then to the right, then back to the left, ran its left wheels into the ditch on the south side of the road, came down the ditch 30 to 40 feet and collided with her automobile. Defendant's testimony is substantially the same, except for distances. He testified that he first saw the Betzold car when the dust of the Johnson car lifted, and it was 75 to 100 feet away. He hit his brakes, swerved to the left, then the right, then back to the left into the south ditch and rode the ditch with his left wheels for about 15 feet and ran into the Betzold car. Plaintiff Fannie Betzold testified she did not move from the time she stopped when the Johnson car was passing until defendant's truck struck her, throwing her back. Defendant testified he did not watch the Betzold car continuously and could not say if it was stopped or moving. When asked where plaintiff's car was in the road when he first saw it, defendant testified, "I don't know exactly but it almost had to be in the middle. I don't know for sure." The defendant then gave the following testimony:

206

"Q. What makes you think it was in the middle?

A. Because to hit her I would have to go up over the bank almost to hit her."

When I saw the Betzold car I applied my brakes.

"Q. Why did you put on your brakes?

A. Because I saw her in the road.

Q. Was she in such a position that you thought you should put on your brakes?

A. Yes.

Mr. Kepner: If the court please, I object. The court: sustained.

Mr. Hickman: Q. Tell the court and jury why you put on your brakes.

A. Well, she was more on my side of the road than on her side and if she would have been on her side of the road I would not even have had to apply my brakes."

The right front of defendant's truck struck the right front of the Betzold car. Defendant's truck rolled over on its side immediately after the collision and the Betzold car was pushed back some 5 feet. Plaintiff Fannie Betzold testified that after the collision she said to defendant, "Why didn't you stay on your side of the road?" and that he said something about going too fast. Defendant did not remember this conversation.

Counsel for plaintiffs contend that the trial court should have found (1) that defendant was guilty of negligence and plaintiffs were free of contributory negligence as a matter of law or (2) that the verdict is against the manifest weight of the evidence or (3) that error was committed in giving defendant's in-

207

struction #12. We regard the last mentioned contention as decisive of this case.

The trial court, at the request of counsel for defendant and over specific objection by counsel for plaintiffs gave the following instruction:

> "No. 12. When reference is made in these instructions to any charge that the defendant, Paul G. Erickson, was negligent it is meant that this defendant is charged of having failed to use that degree of care, just before and at the time of the occurrence in question, which an ordinarily prudent child of his age, experience, intelligence and capacity would have exercised for the safety of others under the same or similar circumstances."

Counsel for defendant seek to justify this instruction by directing our attention to Instruction #10.05 on page 61 of IPI, which reads as follows:

> "A minor is not held to the same standard of conduct as an adult. When I use the words 'ordinary care' with respect to the (plaintiff) (defendant) (decedent), I mean that degree of care which a reasonably careful (person) (minor) (child) of the age, mental capacity and experience of the (plaintiff) (defendant) (decedent) would use under circumstances similar to those shown by the evidence. The law does not say how such a (person) (minor) (child) should act under those circumstances. That is for you to decide."

This type of instruction is usually used in cases where the minor is a plaintiff and an issue is raised as to the minor's contributory negligence. Apparently an attempt has been made to frame an instruction which would be equally adaptable to a minor plaintiff or

minor defendant. IPI reveals that when used in the latter instance, instruction #10.03 should also be given. An examination of IPI reveals that Instruction #10.05 is a companion instruction to Instruction #10.03 and it is intended that both should be used. It is obvious that defendant's instruction #12 does not follow the pattern prescribed by IPI. Aside from this we are of the opinion that it has no application to the particular facts of this case. In so holding we take cognizance of the long line of decisions in this state holding that the standard of care referred to in the instruction has been held proper in cases involving the question of contributory negligence and the care required of a minor in protecting himself against some hazard.

■■■ However, in the case at bar it is undisputed that defendant was only 13 years of age and had no driver's license. The statutes of this state prohibit the issuance of a license to a 13-year-old and make it unlawful for him to operate an automobile at this age. The statute thus in substance declares, that persons of the age of defendant do not possess the requisite care and judgment to operate motor vehicles on the public highways without endangering the lives and limbs of other persons. Thus this provision is designed to protect the public generally who may be lawfully using the highways. We recognize that the failure to have a driver's license does not of itself necessarily establish a causal connection between the operation of the motor vehicle and the injury. However, here the defendant had no right to be operating the truck in question. All 13-year-olds fall within the same category so there can be no standard of care for such persons under the same or similar circumstances. The only standard of care that he could be judged by, is the standard of care required and expected of licensed drivers. We are of the opinion that

this is the degree of care that defendant was required to exercise and not that of a child of his age, experience and capacity generally.

This holding is without precedent in Illinois. It is not without precedent in other states where the courts have been called upon to directly pass on the question. In the very recent case of Dellwo v. Pearson, 259 Minn 452, 107 NW2d 859, plaintiffs were injured by a 12-year-old operating a motorboat. Substantially the same instruction was given in that case as was given in the case at bar. The Supreme Court made a careful and extensive analysis of the instruction in the light of the particular facts involved. The following language of the court is apropos to the case at bar:

"To give legal sanction to the operation of automobiles by teen-agers with less than ordinary care for the safety of others is impractical today, to say the least. We may take judicial notice of the hazards of automobile traffic, the frequency of accidents, the often catastrophic results of accidents, and the fact that immature individuals are no less prone to accidents than adults. While minors are entitled to be judged by standards commensurate with age, experience, and wisdom when engaged in activities appropriate to their age, experience, and wisdom, it would be unfair to the public to permit a minor in the operation of a motor vehicle to observe any other standards of care and conduct than those expected of all others. A person observing children at play with toys, throwing balls, operating tricycles or velocipedes, or engaged in other childhood activities may anticipate conduct that does not reach an adult standard of care or prudence. However, one cannot know whether the operator of an approaching automobile, airplane, or powerboat is

210

a minor or an adult, and usually cannot protect himself against youthful imprudence even if warned. Accordingly, we hold that in the operation of an automobile, airplane, or powerboat, a minor is to be held to the same standard of care as an adult."

Accordingly the giving of defendant's instruction #12 constituted reversible error.

█ Counsel for plaintiffs contend that this case should be remanded for a new trial as to damages only. In this we concur. It is apparent from defendant's own testimony that he did not have the truck under proper control, to say the least. Counsel for defendant theorizes that the evidence is conflicting as to the position of the Betzold car, which makes the question of contributory negligence of Fannie Betzold a question for the jury and relies strongly on the testimony of the defendant which we have heretofore set out. Viewing this testimony in its entirety we are of the opinion that defendant did not actually know where the Betzold car was as he approached it. The evidence is undisputed that the Johnson car passed the Betzold car without incident. The evidence is undisputed that the left wheels of defendant's truck were in the ditch as he came toward the Betzold car and that the right front of the truck collided with the right front of the Betzold car. The physical facts therefore demonstrate the inherent improbability of defendant's theory that the Betzold car was someplace other than as testified to by Fannie Betzold.

Accordingly the judgment of the Circuit Court of Montgomery County will be reversed and the cause remanded for new trial as to damages only.

Reversed and remanded for new trial as to damages only.

REYNOLDS and CARROLL, JJ., concur.